**UNITED STATES of America**

v.

**James E. YORK, Appellant.**

**No. 22468.**

United States Court of Appeals
District of Columbia Circuit.

Argued July 30, 1969.

Decided Sept. 24, 1969.

Mr. William M. Barnard, Washington,
D. C. (appointed by this court), for appellant.

Mr. Edwin K. Hall, Asst. U. S. Atty.,
with whom Messrs. Thomas A. Flannery,
U. S. Atty., and Roger E. Zuckerman,
Asst. U. S. Atty., were on the brief, for
appellee. Mr. John A. Terry, Asst. U. S.
Atty., also entered an appearance for
appellee.

Before WRIGHT, ROBINSON and
ROBB, Circuit Judges.

PER CURIAM:

■ Appellant was indicted in four counts of robbery [1] and seven counts of assault with a dangerous weapon [2] growing out of the holdup of a shoe store staged by three men. At a trial before a jury in the District Court,[3] Loren J. Seifert, an employee of the store, was permitted to identify appellant as one of the holdup men.[4] The jury disbelieved alibi evidence offered by appellant and found him guilty on all counts. The chief complaint registered on this appeal is that Seifert's identification at the trial was vitiated by processes previously utilized by the Government to assess the degree of Seifert's recognition of appellant.[5]

■ The prosecuting authorities, after an initial photographic identification by Seifert and appellant's later arrest, arranged for Seifert to view appellant as he sat in a courtroom of the District of Columbia Court of General Sessions.[6] Seifert's observation and resulting identification occurred without the knowledge of appellant or his counsel.[7] Appellant contends that this episode contravened his Sixth Amendment right to counsel at pretrial identification confrontations.[8] He questions also, on due process grounds, procedures incidental to efforts by the police to obtain identifications of appellant from groups of photographs shown Seifert.[9]

■ Early in the trial, the court ruled that the Government might properly ask Seifert to identify appellant from the witness stand. But it is clear to us, as the Government now concedes, that the viewing in the Court of General Sessions infringed appellant's right to counsel as defined in our recent *Mason* opinion.[10] So, with Seifert's in-trial identification thus jeopardized, we need not, even if we could,[11] inquire whether that identifica-

1. D.C.Code § 22–2901 (1967), since amended (Supp. II 1969).

2. D.C.Code § 22–502 (1967).

3. The indictment charged appellant and two others jointly in each of its eleven counts. Appellant was tried jointly with one of the others. A judgment of acquittal was directed, on the Government's motion at the close of its case, in favor of appellant's codefendant.

4. We think defense counsel's objection at trial was sufficient to enable appellant to contest this identification on appeal. See note 15, *infra*.

5. Appellant presents two additional contentions, which we find unacceptable. As to the first, we apply the standard by which we review trial rulings on motions challenging the legal sufficiency of the Government's evidence, see Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947), and conclude that the Government's evidence tendered a jury issue as to appellant's innocence or guilt if Seifert's in-court identification at the trial was properly to be considered. As to the second, complaining of the trial judge's rendition of the "*Allen* charge," Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1892), it suffices to refer to our prior decisions sustaining it,

*e. g.,* Fulwood v. United States, 125 U.S. App.D.C. 183, 369 F.2d 960 (1966), cert. denied, 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996 (1967), and to state that we are unconvinced that it was coercive in the circumstances here.

6. The record discloses that an Assistant United States Attorney was present with Seifert at the courtroom viewing.

7. The record is unclear as to whether appellant's counsel was in the courtroom at the time. But even if he was, it is apparent that, without knowledge of the observation, counsel would not have been able to protect him. See Mason v. United States, 134 U.S.App.D.C. 280, 284, 414 F.2d 1176, 1180 (1969).

8. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

9. See Simmons v. United States, 390 U.S. 377, 382–386, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

10. *Supra* note 7.

11. Among the subjects upon which the record is fuzzy, see the text *infra* following note 14, the circumstances surrounding some of the photographic identification attempts rank high.

tion was further embarrassed by any impropriety accompanying the photographic displays to which Seifert was exposed. And although the Government did not bring out before the jury any of its pretrial attempts at identification, Seifert's in-trial identification, which the Government did elicit, can be sustained only by "clear and convincing evidence" [12] establishing that it was based on observations untainted by unconstitutional techniques.[13]

■■ On the latter point, the Government argues that the record demonstrates that Seifert's in-trial identification proceeded from independent, legally unimpeachable sources. Appellant urges contrarily that the record shows that the identification was irredeemably infected. While we are free to resolve such a controversy when the record is adequate for the purpose,[14] we must reject both positions. The record before us is deficient at too many points to enable us to proceed with confidence toward a decision as to whether there was an independent source that would vindicate the identification Seifert made at the trial. More-over, it is evident that appellant's claims were not given the careful evidentiary exploration they deserve, perhaps in consequence of the erroneous ruling that pretrial identification activities were rendered unimportant by the Government's resolve not to refer to them in the testimony.[15]

■ We accordingly remand this case to the District Court for a hearing appropriate to investigation and resolution of the problem. If, on the basis of evidence now of record or introduced at the hearing, the Government discharges its burden of establishing an independent source for Seifert's in-trial identification,[16] appellant's conviction will stand. If, on the other hand, the Government fails in that endeavor, with prejudice from the in-trial identification already apparent,[17] appellant will be awarded a new trial.[18]

So ordered.

ROBB, Circuit Judge (dissenting):

I would not remand this case, but would affirm on the record before us.

12. United States v. Wade, *supra* note 8, 388 U.S. at 240, 87 S.Ct. 1926.

13. *Id.*

14. Clemons v. United States, 133 U.S.App. D.C. 27, 46, 408 F.2d 1230, 1249 (*en banc* 1968), cert. denied, 394 U.S. 964, 89 S. Ct. 1318, 22 L.Ed.2d 567 (1969); Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471 (1969); Hawkins v. United States, 137 U.S.App.D.C. 103, 104, 420 F.2d 1306, 1307 (1969).

15. At the trial, defense counsel objected to Seifert's mentioning the identification made at the Court of General Sessions but not specifically to Seifert's in-trial identification. Though lacking in the precision that should characterize trial objections, we think it was sufficient to put the trial court on notice of appellant's claim that the confrontation at the Court of General Sessions was irregular, and to require the trial court to deal with the situation accordingly. When the prosecutor advised that he did not " * * * plan to elicit the fact that [Seifert] identified this defendant in General Sessions without the presence of his lawyer there," the court responded that "[t]hat solves that problem." But it did not, because the further question remained, clearly enough, whether the in-trial identification was tainted by the observation made in the Court of General Sessions. Moreover, this case was pending appeal when our *Mason* decision, supra note 7, was announced, and under well settled principles appellant should be indulged its benefits. *E. g.*, In re Elmore, 127 U.S.App. D.C. 176, 178, 382 F.2d 125, 127 (1967), and authorities cited in notes 10–13 thereof.

16. See notes 12–13, *supra*, and accompanying text. In conducting this inquiry, the court will, of course, consider evidence pertaining to photographic identification attempts to the extent relevant to the question of independent source.

17. The Government's case hung importantly upon the in-trial identification made by Seifert, the only witness able to attempt an identification. The difficulty the jury experienced in reaching a verdict, see note 5, *supra*, underscores the closeness of the case on that issue.

18. Compare Mason v. United States, *supra* note 7, 134 U.S.App.D.C. at 286, 414 F. 2d at 1182.

No objection was made at the trial to Seifert's testimony identifying appellant as the robber. The only objection offered by the appellant's experienced counsel was definite, precise, and limited to testimony concerning the identification of appellant in the Court of General Sessions. Referring to this identification counsel said "I would object to any testimony by Mr. Seifert that he was brought for this purpose of this identification and did identify the defendant York earlier on that day when his counsel was not present." (TR. 51) Counsel was satisfied when the Assistant United States Attorney announced that no testimony concerning the identification at the Court of General Sessions would be offered—and none was offered. The limited scope of counsel's objection is confirmed by the fact that when Seifert was asked to identify the appellant at trial, and did identify him, counsel voiced no objection whatever. (TR. 111, 112)[1] The majority opinion thus holds that the appellant objected to testimony which in fact was received with his consent. I cannot agree to such a transformation of acquiescence into protest.

In any event, I would not hold that Seifert's observation of the appellant at the Court of General Sessions on February 8, 1968 tainted his identification testimony at the trial on August 20, 1968. The record discloses that the appellant's preliminary hearing in the Court of General Sessions commenced at about 11:00 A.M. on February 8. The appellant, who had been released on personal recognizance, was seated in the body of the courtroom before the hearing began. According to Seifert, an Assistant United States Attorney took him to the courtroom before the hearing and "He asked me if there was anybody in there that I could identify and then they just turned me loose. I had my immediate superior with me at the time. He brought me down and both of them just put me to the door and turned me loose and said 'can you see anybody here that you can recognize?' After a few minutes of looking I finally picked out one of them." The man whom Seifert picked out was the appellant. Seifert testified that no one made any statement to him as to who might be in the courtroom, or suggested whom he might identify. (TR. 26, 27) The record shows that after identifying the appellant in the courtroom Seifert went back to work at his place of business a few blocks from the courthouse, later returned and at 12:10 P.M. the same day appeared as a witness and identified the appellant from the witness stand. The appellant at that time was seated at the end of the trial table with his counsel. Appellant's counsel, who was also his counsel at the trial, made no objection to this confrontation and identification, which certainly were more

---

1. The transcript contains the following with respect to the identification at trial:

Q. [By Assistant United States Attorney Mays] Now, I would like to have you look around the courtroom, if you will, and see if you can see either of those persons in the courtroom today.
(The witness complied.)
THE COURT: If you want to step down, go ahead.
(The witness left the stand and viewed the defendants.)
BY MR. MAYS:
Q. Do you see the person you saw in the store on December 30, 1967, in the courtroom today?
A. Yes, sir, I do.
Q. Do you see one or two or—

A. I recognize the gentleman on the right over there at the table.
Q. You recognize the gentleman on the right of the table as what?
A. The fellow with the shopping bag.
Q. Would you describe what he is wearing today?
A. Right now?
Q. Yes.
A. He has on a black pull-over shirt. That's about as much as I have seen of his apparel.
MR. MAYS: Your Honor, may the record reflect the witness has identified the defendant York?
THE COURT: The record will so indicate.

suggestive than the previous viewing in the body of the courtroom.[2]

As I have said, the appellant, free on personal bond, was sitting in the body of the courtroom waiting for his case to be called. Seifert was also properly in court as a witness. If we hold that Seifert's observation and recognition under the circumstances of this case tainted his later testimony then it would seem that an eyewitness must be quarantined until the instant when he takes the stand at trial; for the impact of Seifert's observation in the General Sessions courtroom on his testimony at trial would have been the same if Seifert had gone to the courtroom alone, seated himself there and, while waiting for the hearing to begin, had looked around and recognized the appellant.

So far as the identification of the appellant's photograph by Seifert is concerned, the record discloses that immediately after the robbery Seifert and four of his fellow workers looked at books containing "four or five thousand pictures" without picking out any photograph, (TR. 126) but that later in the day Seifert positively identified the appellant's picture from a group of some fifteen or twenty photographs. (TR. 130) The circumstances of this identification and of any subsequent viewing of photographs by Seifert were fully and carefully explored in a pretrial hearing before the able District Judge, who ruled that "I can't find any evidence whatsoever of any suggestive action on the part of the police." (TR 47) I agree with the District Judge and I think no useful purpose will be served by remanding the case for further consideration of the matter.

Of course we should insist upon fairness in pretrial identification procedures, in conformity with the decisions of the Supreme Court, but in my judgment the majority opinion extends those rulings beyond their intendment and beyond the requirements of fairness.

---

2. The transcript of the hearing (TR. 17) contains the following:

> Q. [By Mr. Rudy, Assistant United States Attorney] Do you see either of those two individuals in the courtroom today?
>
> A. [By Mr. Seifert] Yes, sir; this gentleman over here.

> Q. Are you pointing to the individual seated at the end of the table?
>
> A. The gentleman all the way to my extreme right.
>
> MR. RUDY: I would like the record to reflect the witness has identified the defendant, James York.
>
> THE COURT: Very well.