84 N.Y.2d 725 (1995)
646 N.E.2d 774
622 N.Y.S.2d 472
The People of the State of New York, Respondent,
v.
Steven L. Swamp, Appellant.
Court of Appeals of the State of New York.
Argued December 1, 1994.
Decided January 10, 1995.
David V. Shaw, Public Defender of St. Lawrence County, Canton (Mark F. Kennedy of counsel), for appellant.
Richard V. Manning, District Attorney of St. Lawrence County, Canton (Donald S. Thomson of counsel), for respondent.
Judges SIMONS, TITONE, BELLACOSA, LEVINE and CIPARICK concur with Chief Judge KAYE; Judge SMITH dissents and votes to reverse in a separate opinion.
*728 Chief Judge KAYE.
Where the Grand Jury heard only the results of a preliminary field test indicating the presence of cocaine, was an indictment charging possession of cocaine supported by legally sufficient evidence, or were the People required to submit the results of a formal laboratory analysis? Because the evidence before the Grand Jury, if uncontradicted, established that defendant possessed cocaine, we affirm the determination of the Appellate Division that the People presented a prima facie case sufficient for indictment.
When defendant crossed the United States-Canadian border at Massena, a United States Customs inspector found drug paraphernalia hidden in the car engine, as well as bags of plastic vials, containing chunks of white powder, on his person and in the car. Based on the officer's training in preliminary identification of drugs by appearance and packaging, defendant was arrested on suspicion of possession of drugs. A second Customs inspector, Robert Stephenson, weighed the substance and conducted a Scott-Reagent field test that indicated the presence of cocaine in the powder. The policy of the agency was to defer formal laboratory analysis until it appeared necessary for trial.
Before the Grand Jury, Stephenson testified that he had attended an eight-hour training course at the Customs Academy *729 in identification of drugs and use of various field tests, as well as training in the weighing of drugs. He had conducted more than 1,000 field tests. The widely used Scott-Reagent test, also known as the NIK cocaine test, required Stephenson to place the substance in a plastic pouch with a glass ampoule which, when broken, released a chemical. Where cocaine is present, the substance turns a sharp blue, as it did in this case.
The trial court granted defendant's motion to dismiss the indictment for legal insufficiency, ruling that while results of a field test might be sufficient to establish probable cause, such "preliminary determinations" were insufficient to establish a prima facie case before the Grand Jury. Citing to CPL 190.30, which permits presentation to the Grand Jury of a certified laboratory report in lieu of testimony from the technician who performed the test, the court held that the statute did not permit "conclusory determinations" from "untrained personnel," holding Stephenson's testimony was therefore insufficient.
The Appellate Division reversed and reinstated the first count of the indictment, determining that the observations and testing of the substance by two trained officers were sufficient to establish, prima facie, that defendant possessed cocaine. The court rejected defendant's contention that results of a formal laboratory analysis were required to support an indictment. We now affirm.
We begin analysis by restating the applicable legal standards.
The Grand Jury, of course, does not determine guilt or innocence of the accused. Its primary function "`is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution'" (Matter of Additional Jan. 1979 Grand Jury v Doe, 50 N.Y.2d 14, 19, citing People v Calbud, Inc., 49 N.Y.2d 389, 394). As it applies here, CPL 190.65 authorizes indictment when
"(a) the evidence before it is legally sufficient to establish that such person committed such offense * * * and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense." (CPL 190.65 [1].)
The first prong of the statute requires that the People present *730 a prima facie case; the second "dictates the degree of certitude grand jurors must possess to indict" (People v Jennings, 69 N.Y.2d 103, 115). On a motion to dismiss an indictment under CPL 210.20 (1) (b), the court is limited to consideration of the first prong, legal sufficiency of the evidence. Inquiry into the adequacy of the proof to establish reasonable cause  the "degree of certitude" the evidence provides  is exclusively the province of the Grand Jury (CPL 190.65 [1] [b]; People v Jennings, 69 NY2d, at 115).
Legally sufficient evidence  defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1])  means simply a prima facie case, not proof beyond a reasonable doubt (People v Mayo, 36 N.Y.2d 1002, 1004). The reviewing court must consider whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted  and deferring all questions as to the weight or quality of the evidence  would warrant conviction (People v Mikuszewski, 73 N.Y.2d 407, 411; People v Jennings, 69 NY2d, at 114-115). By contrast to the Federal Grand Jury system, where incompetent evidence may be considered (Costello v United States, 350 US 359, 363), New York State indictments must be based on competent evidence, meaning evidence not subject to an exclusionary rule, such as the prohibition against hearsay (Richardson, Evidence § 4, at 4 [Prince 10th ed]; see also, People v Oakley, 28 N.Y.2d 309, 314).
Finally, in a drug-related prosecution, the People's case is legally sufficient if the evidence provides a "reliable basis" for inferring the presence of a controlled substance (People v Kenny, 30 N.Y.2d 154, 157). More than conclusory assertions that the defendant possessed a drug are required at the Grand Jury stage (People v Dumas, 68 N.Y.2d 729; People v Kenny, 30 NY2d, at 157).
Applying these legal standards to the facts at hand, we conclude that the trial court erred when it held that in order to establish a prima facie case, CPL 190.30 (2) required the People to submit results of a formal laboratory analysis of the substance seized from defendant. While CPL 190.30 (2) does authorize submission to the Grand Jury of a certified laboratory report in place of live testimony of a technician who performed tests on a controlled substance, that provision does not require the People to present the Grand Jury with such a *731 report.[1] It permits a limited exception to the prohibition against hearsay in the Grand Jury  addressing the requirement, in New York State, that an indictment be based only upon "competent" evidence (CPL 190.65 [1]). Here, the officer who performed the field test actually testified before the Grand Jury as to his own observations. Testimony of the Customs officer as to his own observations was not hearsay, and was legally competent evidence. Since the testimony was not subject to an exclusionary rule, application of CPL 190.65 (1) was simply not at issue.
Nor was Stephenson's testimony "conclusory," contrary to the determination of the trial court. Stephenson recounted the observations that led him to conclude defendant possessed cocaine, including the telltale packaging in which the substance was found  a substance that looked like crack-cocaine, which he had been trained to identify  and the presence of drug paraphernalia in defendant's car. Stephenson's testimony was probative of whether the substance found in defendant's possession was cocaine, and tended to corroborate the preliminary Scott-Reagent test, a field test routinely relied upon by law enforcement to determine the presence of a controlled substance. These evidentiary facts provided far more support for the Grand Jury's determination than the showing found insufficient in People v Dumas (68 N.Y.2d 729, supra), where the officer simply asserted that the defendant possessed marihuana without indicating the basis for that claim.
The trial court concluded that results of a single field test were legally insufficient to support an indictment, given that a subsequent formal laboratory analysis might yield a different result. This conclusion was also error.
Evidence later proven unreliable can legally support an indictment. The standard for sufficiency is whether the evidence before the Grand Jury  if uncontradicted  would support a determination of guilt (People v Jennings, 69 NY2d, at 114-115; People v Brewster, 63 N.Y.2d 419, 422). In People v Oakley (28 N.Y.2d 309), we upheld an indictment based on identification testimony later proven to be unreliable. Such evidence  apparently competent at the Grand Jury stage  is *732 to be distinguished from inherently incompetent evidence, inadmissible under any circumstances because subject to a per se exclusionary rule. Evidence deemed inadmissible at trial after extrinsic proof reveals some infirmity may nevertheless have supported a prima facie case at the Grand Jury stage (id.).[2]
Although uncontradicted results of a field test may provide legally sufficient evidence of presence of a controlled substance, meeting the threshold standard of sufficiency is not the same as proving guilt beyond a reasonable doubt at trial (People v Mayo, 36 NY2d, at 1004). Under the statutory scheme, in a felony drug prosecution, CPL 715.50 requires a formal laboratory analysis within 45 days of receipt of the drugs. By the time trial commences, more definitive results will be made available to the defendant. Possible infirmities in the NIK test will by then be moot  either because presence of a controlled substance confirmed that the field test was correct, or because a negative result in the laboratory required dismissal of the case. Where possession of felony-weight drugs is alleged, therefore, the law requires that, prior to trial  where the People will attempt to prove guilt beyond a reasonable doubt  more than a field test be conducted.
Contrary to the concerns of the dissent, if a subsequent laboratory analysis proved the field test incorrect a defendant would not be entitled to dismissal under CPL 210.20 (1) (b), on the ground that the evidence before the Grand Jury was insufficient, (see, dissenting opn, at 735). Sufficiency of evidence before the Grand Jury is examined as of the time of indictment, not in light of subsequent developments (People v Oakley, 28 NY2d, at 313). Dismissal would be available under CPL 210.20 (1) (h), however, on the ground that there exists a "legal impediment to conviction of the defendant for the offense charged," since it would be impossible for the People to obtain a conviction based on the result of a field test that has been conclusively contradicted.
The dissent cites 7 NYCRR 1010.5 (d) in support of its contention that a single NIK field test result does not reliably establish the presence of cocaine, and therefore cannot support *733 a legally sufficient indictment. The cited regulation governs admissibility of NIK field test results to support determination of guilt or innocence at prison disciplinary proceedings. The Department of Correctional Services expressly recognizes that such test results may be presented "as evidence that the suspected substance is what the test result indicates" (7 NYCRR 1010.5). While multiple test results are characterized as allowing a higher degree of certainty than a single test result, even results of a single test are admissible. While results of a single field test may not carry great weight, questions of adequacy of evidence are for the Grand Jury to resolve.
Defendant urges that the officer's testimony was also insufficient because he was not an expert in the area of drug analysis. But prima facie evidence of the presence of a controlled substance need not be based on expert testimony. All that is required is a "reliable basis" for inferring such presence (People v Kenny, 30 N.Y.2d 154, 157, supra). The opinion of a layperson unsophisticated about drugs does not meet that standard (People v Kenny, 30 NY2d, at 157). Officer Stephenson was not a layperson  he had extensive familiarity with drugs and special training in handling and identification of controlled substances.
This evidence provided a reasonable basis for the Grand Jury to infer defendant possessed cocaine (see, People v Mertz, 68 N.Y.2d 136, 139 [evidence of breathalyzer test results is sufficient to establish prima facie case that defendant drove while intoxicated]). Proof beyond a reasonable doubt was not required at this stage. Contrary to the warning of the dissent, therefore, we do not hold that a defendant may be proven guilty beyond a reasonable doubt based solely on the results of a NIK field test, and we do not shift the ultimate burden of persuasion to defendant.
Accordingly, the order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
I agree with the trial court that the evidence before the Grand Jury was not legally sufficient. I would reverse the order of the Appellate Division and dismiss the indictment.
The facts of the case are undisputed. Defendant was detained in the Town of Massena, St. Lawrence County, by a United States Customs Officer on April 24, 1992 after he crossed the International Bridge from Canada. The testimony *734 before the Grand Jury was that his automobile was searched and a bag containing white powder found. In addition, the defendant was searched and white powder and pills were found on him. A NIK field test (Scott-Reagent test) was positive for cocaine. Defendant was arrested. At the subsequent Grand Jury proceeding, no laboratory test report was introduced. Rather, the People introduced the testimony of a police officer concerning the NIK field test. In addition, the People introduced evidence that they looked through a book known as the Physician's Desk Reference in order to determine that the pills were valium.
Defendant was indicted for the criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [5]  cocaine) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03  valium). The trial court dismissed these charges, noting that while the field tests were sufficient for an arrest, they were insufficient for indictment. The Appellate Division reversed, stating that there was nothing in the record to indicate that the NIK field test was insufficient to establish a prima facie case and that a challenge to the scientific test should await appropriate pretrial proceedings.
CPL 190.65 (1) authorizes an indictment (1) when the evidence before the Grand Jury "is legally sufficient to establish that [the defendant] committed such offense" and (2) when "competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense." CPL 70.10 (1) defines legally sufficient evidence as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof."
At the heart of the dispute here is whether a NIK field test is legally sufficient, that is, competent evidence which would establish every element of the crime charged. In my view, it clearly is not.
The NIK field test, standing alone, is insufficient to establish a prima facie case of cocaine possession. It is a test enabling a police officer to presume the existence of a controlled substance. This Court has never previously held that such a field test was a legally sufficient basis for indictment (CPL 190.65). The decision of the trial court was consistent with those cases requiring a laboratory report for the prosecution of, as opposed to the arrest of, an individual. (See, People v Brightman, 150 Misc 2d 60; *735 People v James, 138 Misc 2d 920; People v Burton, 133 Misc 2d 701; People v Ranieri, 127 Misc 2d 132; People v McMillan, 125 Misc 2d 177.)
There is no showing here that the field test was generally accepted as reliable under Frye v United States (293 F 1013). It is worth noting that the rules and regulations governing institutional security refer to a NIK field test as one where a single test may or may not yield a valid result and one where a complete laboratory analysis is required for a qualitative conclusion. 7 NYCRR 1010.5 (d) reads, in part, as follows:
"The NIK Narcotics Identification System is based upon a polytesting procedure whereby a suspect material is subjected to a series of progressively discriminating screening tests. The results of a single test may or may not yield a valid result. However, the sequential results of several tests, if they all indicate a positive reaction for a particular substance, allows a high degree of certainty that the suspect material is in fact what the NIK polytesting system indicates it to be.
"Experiments have been and continue to be conducted with hundreds of licit and illicit chemical compounds in a continuing effort to eliminate false positive and false negative colorimetric chemical reactions. No chemical reagent system adaptable to field use exists that will completely eliminate the occurrence of the occasional invalid test result. A complete forensic laboratory would be required to qualitatively and quantitatively identify an unknown suspect substance. In the absence of such a laboratory facility, the NIK system, utilizing the recommended polytesting procedure, is your best assurance that the presumptive results of a positive identification are what they appear to be" (emphasis supplied).
The opinion of the majority raises two immediate questions. The first is that assuming a laboratory examination made before trial reveals the absence of cocaine, does the defendant then have the right to move to dismiss on the ground that the evidence before the Grand Jury was not legally sufficient? The clear answer must be yes.
Second, and particularly troubling, is the fact that a NIK field test rather than a laboratory examination is now sufficient *736 to convict a person for possession of cocaine. The requirement of legally sufficient evidence is the same before the Grand Jury (CPL 190.65, 70.10), on a motion to dismiss an indictment (CPL 210.30) and at trial, on a motion for a trial order of dismissal (CPL 290.10). The evidence which is legally sufficient to indict must be legally sufficient to convict unless there is some explanation. A defendant should not be forced to defend an indictment where the sole charge is cocaine possession and the prosecution has not determined that the substance in question is really cocaine. The majority's decision, in effect, places the burden on the defendant to come in and explain away evidence that this Court has found legally sufficient, a conclusion with obvious constitutional implications. The decision today permits a Grand Jury to indict and a petit jury to convict on less than legally sufficient evidence, that is, on the presumption that cocaine is present.
A determination prior to trial of whether evidence before the Grand Jury is legally sufficient is appropriate and consistent with the statutory requirements of CPL article 255. That article requires that pretrial motions, including motions to dismiss an indictment, be made in one omnibus motion. In other words the appropriate procedure to determine that evidence before the Grand Jury is competent and establishes every element of the crime charged is by a pretrial motion. If there is any doubt that the evidence is legally sufficient, a court should order a hearing pursuant to CPL 210.45. Thus at the very least a hearing is required to show that the NIK field test establishes all of the elements of the charge.
People v Oakley (28 N.Y.2d 309) is not grounds for upholding the indictment. The issue there was identification. Following the indictment and a motion to suppress identification evidence, the court ruled that showing the defendant alone to the victim was improper. Nevertheless, the in-court identification of the victim was found to have an independent source. Some of the evidence before the Grand Jury was thus clearly competent.
In my view the difference between the majority and dissent is simple but crucial. I believe that an accurate analysis of the substance believed to be cocaine is necessary for the Grand Jury to conclude that there is legally sufficient evidence on which to indict. The Grand Jury's conclusion should not be based upon an analysis which is known to sometimes produce inaccurate results and is acknowledged by those using the test to be insufficient for a definitive conclusion of cocaine.
*737 Finally, a laboratory analysis which demonstrated the absence of cocaine would necessarily lead to a dismissal of the indictment based upon the fact that the People could not establish a prima facie case. This would be true whether the motion was made by the People or by the defendant (consistent with the majority's view) pursuant to CPL 210.20 (1) (h).
Accordingly, I would reverse the order of the Appellate Division.
Order affirmed.
NOTES
[1] By contrast, CPL 715.50 requires the custodian of drugs seized in felony cases to submit the substance for laboratory analysis within 45 days of receipt for qualitative identification and weighing. Notably, the determination to submit a case for Grand Jury consideration generally occurs well before 45 days from arrest have elapsed (see, CPL 180.80).
[2] Defendant also contends that the officer's testimony concerning the results of the field test was incompetent because the People failed to establish the field test was generally accepted as reliable under Frye v United States (293 F 1013). The general reliability of the Scott-Reagent field test was an issue first raised on appeal, and is therefore not preserved for our review.